# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA, |
| Respondent, |
| v. |
| PETER R. TURNER, |
| Defendant/Petitioner. |

Criminal Action No. 06-00026-01 (CKK)
Civil Action No. 09-00674 (CKK)

**MEMORANDUM OPINION**
(October 17, 2011)

Several years ago, Defendant and Petitioner Peter R. Turner ("Turner") was convicted by a jury in this Court on one count of conspiracy to defraud the United States and one count of bribery. Presently before the Court is Turner's [137][1] Motion Under 28 U.S.C. § 2255 to Vacate Set Aside, or Correct Sentence ("Motion to Vacate") and the Government's [150] Opposition to Turner's Motion to Vacate, Set Aside, or Correct Sentence ("Opposition"). Upon a searching review, the Court finds that the parties' submissions, the relevant authorities, and the record as a whole conclusively show that Turner is not entitled to the requested relief. Accordingly, the Court shall DENY Turner's [137] Motion to Vacate.

## I. BACKGROUND

In 1998, Turner, a volunteer driver for the Department of Veterans Affairs Medical Center, began a romantic relationship with Vester Mayo ("Mayo"), a nurse at the Medical Center. Mayo, who had taken out a life insurance policy through a federally administered program,

---

[1] All docket references are to *United States v. Turner*, Criminal Action No. 06-00026-01 (CKK) (D.D.C.).

suffered a stroke and died in December 2000. The life insurance beneficiary designation form in her personnel file listed Turner as a co-beneficiary. Turner filed a claim for benefits and received $20,562.90. Shortly thereafter, Turner wrote a check in the amount of $1,000 to LaTanya Andrews ("Andrews"), a payroll technician at the Medical Center. Subsequently, evidence that a reasonable jury could credit would show that Mayo's signature on the beneficiary form in her personnel file had been forged, that Andrews had access to Mayo's personnel file containing the form, and that Turner had been seen forging Mayo's signature on two prior occasions.

On January 31, 2006, a federal grand jury charged Turner and Andrews with conspiracy to defraud the United States in violation of 18 U.S.C. § 371 and bribery in violation of 18 U.S.C. § 201(b). In July 2006, Turner and Andrews were tried in front of a jury in a four-day trial presided over by the undersigned. The jury convicted Turner on both counts. Turner moved for a judgment of acquittal, which the Court denied in a detailed opinion on October 24, 2006, finding that the Government had presented ample evidence to sustain the jury's verdict. *See* Mem. Op. (Oct. 24, 2006), ECF No. [64].

Following a number of extensions, Turner's sentencing proceedings began in earnest in the summer of 2007. Apart from memoranda in aid of sentencing, Turner submitted a series of submissions pertaining to his myriad medical conditions, and sentencing proceedings were continued while Turner underwent diagnostic testing and inquiries were made into the Bureau of Prison's ability to care for Turner. Each of Turner's filings included medical evidence and legal argument in an attempt to demonstrate that his age and infirmities warranted a downward departure under §§ 5H1.1 and 5H1.4 of the United States Sentencing Guidelines and that he should be sentenced to a period of home detention in lieu of incarceration. At the time of his

sentencing, the record reflected that Turner suffered from the following medical conditions: asthma requiring treatment from steroids and inhalers; sleep apnea requiring the use of a continuous positive airway pressure device and oxygen at night; post-traumatic stress disorder resulting in headaches and seizures; congestive heart failure; gout and degenerative joint disease occasionally requiring treatment with narcotics; diabetes treated by medication but not fully controlled; severe peripheral neuropathy; renal failure; temporary spells of blindness; and a possible autoimmune disease such as lupus.

On September 7, 2007, the Court sentenced Turner to two concurrent thirty-three month terms of imprisonment to be followed by two years' of supervised release. In imposing this sentence, the Court recognized that Turner's many medical conditions were serious, severely limiting, and permanent, but nonetheless found the circumstances did not warrant the Court exercising its discretion to grant a downward departure based upon an "extraordinary physical impairment" under §§ 5H1.1 and 5H1.4. On September 20, 2007, the Court ordered Turner to surrender to an institution designated by the Bureau of Prisons.

On September 21, 2007, Turner appealed to the United States Court of Appeals for the District of Columbia Circuit and moved for release pending appeal. The Court of Appeals instructed Turner to present his motion to this Court in the first instance, which he did. On January 28, 2008, the Court denied Turner's motion in a detailed opinion. *See United States v. Turner*, 531 F. Supp. 2d 123 (D.D.C. 2008). Upon reviewing the considerable body of pre- and post-sentencing medical evidence and information, the Court found that the record was in accord with its prior understanding that Turner suffers from several chronic medical conditions requiring continuous evaluation and medical care, but that the record did not establish that his conditions

were acute or likely to require immediate medical intervention.

On December 5, 2008, the United States Court of Appeals for the District of Columbia Circuit issued a decision resolving Turner's appeal. *See United States v. Turner*, 548 F.3d 1094 (D.C. Cir. 2008). The Court of Appeals affirmed Turner's conviction, but held that this Court erred by applying the version of the United States Sentencing Guidelines in effect at the time of sentencing and not the version in effect on the date that Turner's offenses were committed. Accordingly, the Court of Appeals remanded for purposes of resentencing.

Turner filed his Motion to Vacate on April 4, 2009. Turner has been represented by various counsel throughout this case, but his Motion to Vacate is brought *pro se*. The Government filed its Opposition on June 22, 2009. Thereafter, the Court and the parties proceeded to conduct resentencing proceedings, which included the preparation of an updated presentence investigation report, the exchange of sentencing memoranda, motions practice, and hearings. On September 16, 2009, the Court sentenced Turner to two concurrent terms of twenty-seven months of incarceration to be followed by two years' of supervised release.

By September 2, 2011, Turner had completed his term of incarceration and moved the Court for an early termination of his supervised release under 18 U.S.C. § 3583(e). That motion remains pending and shall be resolved by the Court separately.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside, or correct its sentence if the prisoner believes that his sentence was imposed "in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of

4

the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The circumstances under which such a motion will be granted, however, are limited in light of the premium placed on the finality of judgments and the opportunities prisoners have to raise most of their objections during trial or on direct appeal. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). Nonetheless, "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). However, the decision whether or not to hold a hearing is entrusted to the district court's discretion, particularly where, as here, the reviewing judge presided over the proceeding in which the petitioner claims to have been prejudiced. *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1131 (1997). "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 4(b).

### III. DISCUSSION

Despite its brevity, Turner's [137] Motion to Vacate rests on several grounds. The Court addresses each ground in turn.

*A.    Turner's Ineffective Assistance of Counsel Claim*

First, Turner claims that his trial counsel's performance abridged his Sixth Amendment right to effective assistance of counsel, a right that was articulated in *Strickland v. Washington*,

466 U.S. 668 (1984).[2] To establish a successful claim for ineffective assistance of counsel under *Strickland*, a petitioner must prove both (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citing *United States v. Hughes*, 514 F.3d 15, 17 (D.C. Cir. 2008)). The reviewing court must begin with a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment, *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1403 (2011), and it is the petitioner's burden to show that counsel made errors "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment, *Harrington v. Richter*, __ U.S. __, 131 S. Ct. 770, 787 (2011). Even then, the petitioner must further establish prejudice, a showing "[t]hat requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen*, 131 S. Ct. at 1403 (quoting *Richter*, 131 S. Ct. at 791). "Even under *de novo* review, the standard for judging counsel's representation is a most deferential one," *Richter*, 131 S. Ct. at 788, and "[s]urmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, __ U.S. __, 130 S. Ct. 1473, 1485 (2010) (citations omitted).

Here, Turner's ineffective assistance of counsel claim rests on the following allegations:

> Petitioner was represented or mis-represented by legal representation assigned by the Court that was either indifferent to Petitioner's case and defense or unfamiliar with the proceedings in Federal Court. On several occasions, Petitioner request [sic] assigned legal representation to raise several pertinent items of defense in his case but Counsel refused. * * * Moreover, Petitioner's assigned legal

---

[2] Turner did not raise his ineffective assistance of counsel claim on direct appeal, but there is no procedural default for failure to raise an ineffective assistance claim on direct appeal, even where, as here, trial and appellate counsel were different. *See Massaro v. United States*, 538 U.S. 500, 503-04 (2003).

6

Counsel disregarded nearly all information provided by Petitioner. Pet'r's Mot. to Vacate at 4. Simply put, "vague and conclusory" allegations of this kind are woefully inadequate to overcome the strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in discharging his responsibilities. *Simms v. United States*, 730 F. Supp. 2d 58, 61 (D.D.C. 2010); *see also United States v. Taylor*, 139 F.3d 924, 923 (D.C. Cir. 1998) (noting that "[s]ummary disposition" of an ineffective assistance of counsel claim "may [] be appropriate where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion").

The lone exception to the foregoing observation relates to Turner's allegation that "although [he] had difficulty communicating with [his] assigned Attorney due to [m]edical and educational comprehension, at no time did said Attorney provide for a 'competency evaluation' . . . before court-proceedings began," Pet'r's Mot. to Vacate at 4, which at least has the benefit of some specificity. However, the competency standard articulated by the United States Supreme Court asks "(1) 'whether' the defendant has 'a rational as well as factual understanding of the proceedings against him' and (2) whether the defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding.'" *Indiana v. Edwards*, 554 U.S. 164, 170 (2008) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960) (*per curiam*)) (emphasis omitted). The defendant bears the burden of proof to demonstrate that he lacks the competency to stand trial. *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996). Here, Turner has adduced no facts that would suggest that there was "reasonable cause" to believe that, at the time of trial, he was incompetent in the sense that he was "unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." 18 U.S.C. §

4241(a). Turner does not dispute that he had a rational and factual understanding of the proceedings against him, and his mere allegation that he may have experienced some "difficulty" communicating with his counsel, even if true, falls far short of suggesting that the difficulty was so profound so as to prevent him from "consult[ing] with his lawyer with a reasonable degree of rational understanding." *Dusky*, 362 U.S. at 402. Indeed, despite the considerable medical evidence and information presented to this Court to date, there is no indication that Turner has ever suffered from the sort of condition that would support even a colorable claim of incompetency. Furthermore, this Court had the opportunity to directly observe Turner before, during, and after trial, and has no doubt that he had a rational and factual understanding of the proceedings against him and the ability, which he in fact exercised, to assist in his defense and consult with his counsel with a reasonable degree of rational understanding.[3] On this record, Turner's contention that his trial counsel's representation of him was constitutionally inadequate because he did not request a competency hearing on Turner's behalf is insufficient to override the strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in discharging his responsibilities.[4]

For the reasons set forth above, the Court shall DENY Turner's Motion to Vacate insofar

---

[3] This Court has previously had the opportunity to express its "healthy skepticism" of Turner's self-reporting as to his conditions. *See Turner*, 531 F. Supp. 2d at 130.

[4] Unlike the Government, the Court does not understand Turner to be directly challenging the efficacy of the legal assistance provided him by his *appellate* counsel. In his Motion to Vacate, Turner mentions his appellate counsel only in the course of explaining why he failed to raise certain issues on direct appeal. *See* Pet'r's Mot. to Vacate at 4, 6. However, even assuming, *arguendo*, that Turner intended to assert such a claim in relation to his appellate counsel, it would fail for the same reasons—namely, his vague and conclusory allegations are patently insufficient to overcome the strong presumption that counsel rendered effective assistance and exercised reasonable professional judgment.

as it is predicated upon his ineffective assistance counsel claim.

B. *Turner's Competency Claim*

Second, Turner asserts a stand-alone claim that he was not competent to stand trial or contribute to his defense (one that exists independently from his contention that his counsel's representation was constitutionally inadequate because counsel failed to raise such a claim at trial), contending that he "suffered from several illnesses" that "made it almost impossible for him to proceed in a trial and defend himself in a clear and lucid manner as well as communicate with his attorney." Pet'r's Mot. to Vacate at 5. However, Turner has procedurally defaulted any such claim because he failed to raise it on direct appeal. The writ of habeas corpus is an extraordinary remedy and "will not be allowed to do service for an appeal." *Reed v. Farley*, 512 U.S. 339, 354 (1994) (internal quotation marks and citation omitted). Therefore, "[w]here a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (citations omitted). In this case, Turner has not shown that "some objective [external] factor" prevented him from challenging his competency on direct appeal, *United States v. Lawson*, 608 F. Supp. 2d 58, 62 (D.D.C. 2009), the record does not support a colorable claim of incompetency such that might warrant a finding of actual prejudice, *see supra* Part III.A, and there is ample evidence to support the jury's determination that Turner is in fact guilty of the offenses with which he was charged, *see* Mem. Op. (Oct. 24, 2006), ECF No. [64]. Turner instead contends, with no meaningful measure of detail, that he failed to raise the competency issue on direct appeal because his "legal representative refused to raise such issues in full." Pet'r's Mot. to

Vacate at 5. True, ineffective assistance of counsel may provide "cause" for purposes of avoiding a procedural default, *see Casseday v. United States*, 723 F. Supp. 2d 137, 152 (D.D.C. 2010), *aff'd*, No. 11-3016, 2011 WL 3903358 (D.C. Cir. Aug. 15, 2011), but Turner has adduced no facts that could override the strong presumption that his appellate counsel rendered adequate assistance and exercised reasonable professional judgment in discharging his responsibilities. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective . . . we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default."). Under these circumstances, the Court concludes that Turner's Motion to Vacate is procedurally barred insofar as he seeks to challenge his competency. *See United States v. Spadaro*, 675 F. Supp. 2d 36, 38 (D.D.C. 2009) (holding that petitioner's failure to raise competency issues on direct review meant that he "procedurally defaulted the claims that he was not competent to assist with his defense and that he received an incomplete competency evaluation."). Alternatively, this Court had the opportunity to directly observe Turner before, during, and after trial, and has no doubt that he had a rational and factual understanding of the proceedings against him and the ability, which he in fact exercised, to assist in his defense and consult with his counsel with a reasonable degree of rational understanding. Therefore, the Court shall DENY Turner's Motion to Vacate insofar as it is predicated upon his competency claim.

    C.    *Turner's Contention that the Court Used the Incorrect Version of the United States Sentencing Guidelines in Determining His Original Sentence*

Third, and finally, Tuner contends that the Court improperly used the version of the United States Sentencing Guidelines that was in effect at the time of sentencing and not the version that was in effect on the date that his offenses were committed in determining his original

sentence. *See* Pet'r's Mot. to Vacate at 7. However, this precise issue was raised and resolved by the United States Court of Appeals for the District of Columbia Circuit in addressing Turner's appeal. The Court of Appeals agreed with Turner's position and remanded for resentencing. Since Turner filed his Motion to Vacate, the Court has resentenced him in accordance with the Court of Appeals' instructions. Accordingly, this aspect of Turner's Motion to Vacate is moot and shall be DENIED on that basis.

D.  *No Certificate of Appealability Shall Issue From This Court*

When the district court enters a final order resolving a petition under 28 U.S.C. § 2255 that is adverse to the petitioner, it must either "issue or deny a certificate of appealability." Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 11(a). By statute, "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Such a showing demands that the petitioner demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). For the reasons set forth above, the Court concludes that Turner has failed to make that showing in this case, and, accordingly, no certificate of appealability shall issue from this Court. To the extent Turner intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.

## IV. CONCLUSION

For the reasons set forth above, the Court shall DENY Turner's [137] Motion to Vacate. Furthermore, no Certificate of Appealability shall issue from this Court. To the extent Turner intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22. An appropriate Order accompanies this Memorandum Opinion.

Date:   October 17, 2011

/s/ Colleen Kollar-Kotelly
**COLLEEN KOLLAR-KOTELLY**
United States District Judge